*126 The last argument took place (in the absence of the Reporter) in February 1818, before a Coui’t consisting of all the Judges, except Judge Fleming: but the point ^ec^e<* *s Mty discussed in the following opinions.
Judge Coalter.
As to the general question, wlieth-er a Bill 0f exceptions properly lies to the opinion of a Court of law in granting or refusing a new trial upon the testimony, I have no doubt, as well on principle as on the uniform decisions and declarations of this Court, hut that such an opinion may be reviewed by an appellate Court, on a Bill of exceptions, whenever the motion is founded on the allegation that the verdict is contrary to the law, arising on the facts appearing in evidence before the jury; and 1 incline to think that such opinion may in like manner be reviewed, where the application is made on the ground of the verdict being contrary to the weight of evidence; though, in this latter case, if the motion is overruled, there ought to be very strong grounds to induce an appellate Court to set aside such verdict, against the opinions of a Court and jury, who not only heard the witnesses depose, but saw the manner in which they gave their testimony.
As to the manner in which such bill of exceptions should be framed; whether, as in the case of Keys v. M'Fatridge, (1) lately decided in this Court, it is most proper to state the facts that were proved; or, as in the case before us, to give a detailed statement of what each witness swore; there may be some doubt; but I think either may, according to circumstances, be proper, and that it might be unsafe to confine it to the one or the other mode; and, more especially, that it would be unsafe to confine it to the mode adopted in the former case.
In the first case, where the motion is made purely on the ground of a mistake of law arising upon the facts, concerning which there is no controversy, as in the case of Keys and M'Fatridge, where all the testimony was on the part of the plaintiff; a general statement, that such and such ‘V+s were proved, is perhaps all that would bo necessar. but where there is a contrariety of *127 .evidence, or any inferences to be drawn by the jury, it might be unsafe to adhere to that course, especially if the motion should prevail, as thereby the province of .the jury to infer facts, and to wegh and stamp on every part of the testimony its intrinsic value, might be invaded.
This doctrine will perhaps be well illustrated by examination of the case before us.
I had at first thought this was a plain case of a mistake of the Court and jury as to the law arising on the evidence. I supposed there was no doubt but that a fiduciary possession was proved in the intestate of the plaintiff; and that, consequently, he could not recover on that possession: and had the Judge who heard the trial been of the same opinion, unless he had mistaken the law, he must have granted a now trial; and, on an exception taken on the other side, if he had confined himself merely to the statement that the fact so appeared in proof to the jury, and could not have been called on to detail the evidence proving it, we must have affirmed his judgment; but, had the case been brought before us in the way it now is, we might have agreed with the jury and reversed that judgment.
From the evidence in this case, admitting it all to be credible, (which we probably ought, there being no allegation to the contrary,) and that there is no material contradiction in it, (as I also incline to think,) the jury may have believed, from all the circumstances, that, although there was a trust between old Mr. Bennett and his son in law Lark, of which the intestate of the appellee might at some time or other have received information, that yet he may have had an adverse possession of more than five years under a total ignorance of, and in opposition to, that trust; or they may have believed, and that from the testimony of a witness introduced by the appellant himself, (who deposed, in substance, that Bennett told Jones the intestate to take care of the slaves in controversy, as, after the death of Mrs. Lark, his mother in law, they might be of use to him and his family,) that Bennett the elder had confirmed the gift to .the intestate of the appellee, reserving simply a life es *128 tate to Ilis dauS,ltel‘ Mrs* Lark, whose claim is not the ground work of this defence, (she having always acquies» ed in the possession,) but which is asserted by the appel*ai1^ as Executor of Bennett, and who, in that character, claims a right to hold possession. But if this Court w-ouj(i not think itself justified in setting aside a verdict in this case, corroborated as it is by the approbation of the Court, (and on this ground alone, on a more minute view of the testimony than I had at first taken, I am not for interfering therewith, but for affirming the judgment,) it does not follow that the Court would, or ought to have given a different judgment, if a new trial has been granted, and, with that difference only, the case had appeared before us precisely as it now does.
In cases of new trials, resting, as they do on sound discretion, I am not for restricting the course that is to be pursued by the Courts in presenting, to the appellate .jurisdiction, (as they must be presumed always desirous to do,) THE VEEY TEITTH AND JUSTICE OF THE CASE as it appesrs before them, or for occluding to the parties any course which may be necessary for that purpose; leaving it to the vigilance, wisdom, integrity and independence of the Courts to prevent, in this, as in all other cases, any improper use which may be made of, or advantage gained by the rules and course of proceeding.— No system of practice can be perfect and unsusceptible of abuse; and I fear that, in this case, a restricted course will be most liable to perversion.
If I am right, however, that a Bill of exceptions will lie to a judgment granting or refusing a new trial on the ground that the verdict is contrary to the weight of evidence, (and I fear we would be going too far to say that, if a Court should grant a new trial where the evidence preponderates in favour of the verdict, or where the case mainly turned on the credit due to witnesses, arising, either from a conflict between their statements, or upon discrediting proofs, no bill of exceptions would lie,) I can’t perceive how such a case could be presented to the appellate tribunal without a detailed statement of the evidence. But, if we decide that such detailed statement, *129 in all cases, is improper, we in effect decide that no Bill * A of exceptions will lie in the case last supposed.
Judge Roaxe
pronounced the Court’s opinion, as follows.
This is an action of detinue brought in the Superior Court by the appellee against the appellant. On the general issue, a Verdict was found for the plaintiff. A motion was immediately made for a new trial; but it was adjourned over until the next day, when the motion was overruled. The defendant excepted to the opinion of the Court, preyed that the evidence might be certified of record, and, that being done, appealed to this Court. It is not shewn that the evidence was taken down at the trial, nor that it was then taken down from the months of the witnesses: and yet the whole evidence given in, is added, and not the facts merely as they appeared in evidence to the Judge. The Evidence, as it appears on the record, is conflicting and contradictory.
Although 1he Bill of Exceptions does not state on what ground the motion for anew trial was made, yet, having stated none other, and the evidence being contrarian! a,ncl contradictory as aforesaid, we arc obliged to infer that that ground was, that the Verdict was contrary to evidence: and the question is, whether it is competent to a party to caray all the evidence to the appellate Court, by a bill of exceptions, and, on the ground of it, to reverse a judgment of the Court below refusing to grant a new trial.
It does not follow that a Judge believes every Witness who gives evidence before him; as he may well hesitate to do, from the manner of test ifying, and other extraneous circumstances; nor can he do it where they conflict with one another. It is evident, therefore, that, in this case, the opinion of this Court might he founded upon the testimony of witnesses who were discredited both by the Jury and the Court below. This Court only sees the evidence on the record; and, on payer, the credit of every witness is the same, who is not positively impeached. This would be for this Court, not only to revise and reverse the opinion of the Court below, on a question. *130 touching* the weight of evidence, and the credit of the witnesses, but to do it in the dark, or, at least, with lights inferior to those possessed by that Court. That ^our^ while it can faithfully transmit to this, the actual-words spoken by the witnesses, can give it no fac simile 0f ^¡ie manncr 0f testifying, the hesitation or partiality manifested on the trial, or the like. With respect to these important circumstances, as they relate to the weight of testimony and credibility of witnesses, this Court is entirely in the dark:—the advantages are exclusively confined to the Court of trial.
It is an important principle that the revising Court should have the same lights, and act upon the same data as the inferior Court. This is always so, where the case depends upon a question of law'; for that question, being permanently spread upon the record in the trying Court, is carried up to all the revising tribunals. It is a further principle, equally important, that, where this advantage is wanting in the revising Court, the judgment of the Court below will preponderate. On this principle this Court acted, in the case of Chaney v. Saunders, 3 Munf. 51, On this principle, it is held, in England, that a new trial will be granted, after a trial at bar, rather than after trials at nisi prvns; because the former is founded upon,what appeared to the whole Court, whereas the latter are founded upon the opinion of a single Judge.'— (1 Burr. 394.) On this principle it is also held, that, where there has been a view, the Court will not, except for some very special reason, grant a new trial; because the Jui'y may have been influenced by what they saw on the view, and which the Court did not see. (6 Bac. 568.) This last position is entirely analogous to the case before us, and is decisive of it. The Jury and the Court below saw that which this Court cannot see. They had, or may have had, the most cogent reasons for discrediting witnesses, on whose testimony, (it appearing only on paper,) this Court might found it’s judgment.
We ai’e, therefore, of opinion, that the bill of exceptions, as now exhibited, was not properly taken, and, therefore, that it furnishes no just ground to reverse the judgment.
*131 'Whether a party can, on overruling a motion for a mnv trial, on the alledgod ground of the verdict being contrary to evidence, require the Judge to state in a bill of exceptions the FACTS as tiny appeared in evidence to him, and carry up the case to the appellate Court thereupon, is a different question. We are inclined to think it has been affirmatively settled, by the admissions of this Court, and the practice of the Country. In that case, the exception is not liable to the objection existing in the case before us. The appellate Court does not in that case depart from, or over rule the decision of the trying Court, as to the weight of testimony, or the credit due to any witness. It only acts upon his own certificate and acknowledgment of his opinion upon the subject. Such a bill of exceptions may be likened to the report of a nisi prius Judge in England; which, as to the facts, is conclusive with the Courts of Westminster Hall. It does not, like the bill before us, bring the whole matter again into controversy. It does not lengthen the record beyond all reason, by inserting, and that too after the witnesses-have dispersed and departed, all the Evidence given in at the trial. It only states, briefly, the facts, as they appeared to the Judge, and are admitted by him to have been proved; and, in consequence of such his admission, the appellate Court founds it’s decision upon the same facts as those which governed the Court below. There are also other circumstances favouring an appeal, or a bill of exceptions, of this last character. They result from the nature and organization of our Courts. The Members of the County Courts are perpetually changing, and those of the former District Courts changed at every term. If no appeal could lie from a decision on a new trial, and the same judges could not attend at the next term, or even on the next day, there could be no adjourn-, jnent of the question; the decision must, therefore, he made off-hand, by which great injustice might ensue:— and if a decision, by not being promptly made, could not be made at all, (owing to a change in the identity of the Judges,) parties would often be driven into Courts of .Equity to obtain a new trial; as has often been done, in *132 thig Country, from the necessity of the case. In this v*ew> too, less objection would result from giving' a speedy, and even a hasty decision, on a motion for a new trial. If, from that cause, an error should intervene, the x ' bill of exceptions having stated the facts as they were actuaUy proved on the trial, the error could be regularly corrected in the appellate Court.
Although the ground of this reasoning fails, in part, as to the Superior Courts of law, by the permanent assignment of the same Judge to the respective Courts, it still holds as to the County Courts, and formerly held as to the District Courts. For this reason, and because wre see none of the evils resulting, which exist in the case before us, we should be disposed to entertain a bill of exceptions of the description last mentioned. But the Objections now taken to the bill before us must prevail, and repel it from the consideration of the Court.
We are, consequently, of opinion, to affirm the Judgment.

 Note. See ante. p. 18.